IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | |
|---|---|
| MASOOD TABIBIAN, | § |
| | § |
| Plaintiff, | § |
| | § CIVIL ACTION NO. 4:09-CV-2008 |
| v. | § |
| | § |
| ADAM JEFFREY KATZ, P.A. and | § |
| NATIONAL MANAGEMENT | § |
| RECOVERY CORP., | § |
| | § |
| Defendant. | § |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge upon referral from the District Judge is Plaintiff's Motion for Attorney's Fees and Expenses (Document No. 59). Plaintiff initially filed this case on June 26, 2009, alleging that Adam Jeffrey Katz, P.A. ("Katz") and Absolute Recovery Corp. ("ARC") had violated the federal Fair Debt Collection Practices Act (the "FDCPA"), the Texas Deceptive Trade Practices Act (the "DTPA"), and the Texas Collection Practices Act (the "TCPA"). Plaintiff settled his claims against ARC in early 2009. However, on July 15, 2009, Plaintiff added National Management Recovery Corp. ("NMRC") as a defendant by filing his First Amended Complaint (Document No. 4) and alleging that NMRC had violated the FDCPA, the DTPA, and the TCPA. Plaintiff subsequently filed a Second Amended Complaint (Document No. 19) on September 2, 2009. In the Second Amended Complaint, Plaintiff alleged certain claims under the FDCPA as class claims against Katz and NMRC, and raised one claim under the TCPA as a class claim against Katz. On September 24, 2009, Plaintiff filed his Motion for Class Certification and Memorandum in Support Thereof (Document No. 26). All other claims remained individual claims against Defendants.

1

While undergoing discovery in April 2010, Plaintiff and Defendants began to negotiate a settlement, and on June 2, 2010, the parties filed a Joint Notice of Settlement (Document No. 58). According to the settlement agreement, Defendants Katz and NMRC agreed to pay Plaintiff the sum of $3,500 in damages, in addition to his reasonable attorney's fees and expenses to be determined by the Court at a later date.

In his Motion for Attorney's Fees and Expenses (Document No. 59), Plaintiff requests that this Court allow an award of attorney's fees and expenses pursuant to 15 U.S.C. § 1692k.[1] According to Plaintiff, his attorney's fees amounted to $54,756.00 while expense totaled $3,185.10. Plaintiff thus requests the sum of $57,756.00. Neither Katz nor NMRC has filed an objection to the amount requested.

## I. Attorney's Fees

In the Motion for Attorney's Fees and Expenses (Document No. 59), Plaintiff requests and award of fees based on 167.1 hours of work on his case. According to Plaintiff, the 167.1 hours derive from work completed by attorney Matthew B. Probus (148.3 hours at an hourly rate of $350), attorney John Wesley Wauson (3.0 hours at an hourly rate of $450), and paraprofessionals (15.8 hours at an hourly rate of $95).

### A. Prevailing Party

The Court must first determine whether Plaintiff should be considered a prevailing party in this case. The standard for determining whether "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes" is whether "they succeed on any significant issue in

---

[1] The Court notes that an award of attorney's fees under the DTPA and TCPA employs a virtually identical analysis to that used by the federal courts. *See, e.g., Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (considering whether the trial court's award of attorney's fees under the DTPA was both reasonable and necessary).

2

litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). Furthermore, the Supreme Court has instructed that

> [t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute. Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*[.]

*Tex. State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792-93 (1989).

In this case, Plaintiff's attorney succeeded such that Plaintiff may be considered the "prevailing party". Plaintiff's attorney negotiated a settlement on all individual claims against Katz and NMRC except the amount of attorney's fees and expenses recoverable. Neither Katz nor NMRC contends that Plaintiff should not be considered a prevailing party. Therefore, the Court does consider Plaintiff the prevailing party in this case.

### *B. Reasonable Attorney's Fees*

Having determined that Plaintiff is the prevailing party, the Court must now determine what a reasonable attorney's fee would be in this case. *See Hensley*, 461 U.S. at 433 ("It remains for the district court to determine what fee is 'reasonable.'"). In determining a reasonable fee, this Court employs a three-part analysis. *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1092 (5th Cir. 1982). First, the Court determines the nature and extent of services provided by counsel. *Id.* Second, the Court sets a value on those "services according to the customary fee and quality of the legal work[.]" *Id.* Before proceeding to the third step in the analysis, the Court computes the results from steps one and two into the "lodestar" amount (the reasonable number of hours extended by counsel multiplied by a reasonable hourly rate). *Id.* at 1092-93. Once the lodestar amount is calculated, the Court proceeds to the third step of the process. In the third

step, the court adjusts the lodestar amount in accordance with certain enumerated "factors that may be of significance in the particular case." *Id.* at 1092.

In *Johnson v. Ga. Highway Express, Inc.*, the Fifth Circuit outlined those factors that may or may not require an adjustment of the lodestar amount as:

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal service properly;

(4) The preclusion of other employment by the attorney due to acceptance of the case;

(5) The customary fee;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or the circumstances;

(8) The amount involved and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client; and

(12) Awards in similar cases.

488 F.2d 714, 717-19 (5th Cir. 1974). Of these twelve factors, "the most critical...in determining an attorney's fee award is the 'degree of success obtained.'" *Saizon v. Delta Concrete Prods., Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (internal citations omitted).

*i. Lodestar Calculation*

In calculating the lodestar figure, the plaintiff bears the burden of documenting the hours worked and the reasonableness of the rates. *See Hensley*, 461 U.S. at 437 ("The [fee] applicant

should exercise 'billing judgment' with respect to hours worked...and should maintain billing time records[.]").

Here, Plaintiff claims that his counsel's firm collectively spent 167.1 hours on this case. Of the 167.1 hours, attorney Matthew B. Probus contributed 148.3 hours, John Wesley Wauson worked 3.0 hours, and paraprofessionals spent 15.8 hours of their time. Furthermore, Plaintiff claims that a reasonable hourly rate for Mr. Probus's work is $350, a reasonable hourly rate for Mr. Wauson's work is $450, and a reasonable hourly rate for the paraprofessional' work is $95. In support of these assertions, Mr. Probus has provided the Court with an affidavit regarding the amount of time he spent on the case (Document No. 59-1), as well as a detailed billing statement from his firm (Document No. 59-3). Using the number of hours worked and the suggested hourly rates, the total for the lodestar amount is $54,756.

Having considered the documentation of the number of hours worked, the complexity of the claims, and the amount of discovery, this Court concludes that counsel appears to have worked a reasonable number of hours. Likewise, this Court concludes that the hourly rates of $350 for Mr. Probus and $450 for Mr. Wauson are reasonable. However, the Court finds that the hours worked by the paraprofessionals did not wholly consist of legal work that should be compensated at $95 per hour. For example, the timesheets provided by Plaintiff's counsel notes that paraprofessionals spent roughly 2.5 hours to "sort, organize, and index [the] file." (Document No. 59-3). In light of this, the hourly billing rate of $95 for the entire 15.8 hours is excessive.

Accordingly, this Court calculates the lodestar amount as follows: Plaintiff's attorneys and staff reasonably expended 167.1 hours on this litigatioin—148.3 hours by Mr. Probus at $350 per hour; 3.0 hours by Mr. Wauson at $450 per hour; 13.3 hours of legal work by

5

paraprofessionals at $95 per hour. Additionally, the staff spent 2.5 hours for purely clerical work, which should be compensated at $30 per hour. The lodestar amount, which is a presumptively reasonable amount, therefore totals $54,593.50. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

*ii. Johnson factors*

(1) Time and Labor Involved

In determining the lodestar amount, the number of hours claimed by the Plaintiff was found to be generally fair and reasonable. This factor has been taken into account.

(2) Novelty and Difficulty of the Question Presented

The factual and legal issues for Plaintiff's individual claims were not overly difficult of unusual, especially in light of counsel's expertise in the area of consumer law and debt collection practices. The affidavit filed by Mr. Probus reflects extensive experience in consumer law and prosecution of deceptive trade practices claims. (*See* Document No. 59-1). For example, Mr. Probus describes seven civil actions in which he either represented or currently represents plaintiffs involved in deceptive trade practices and fair debt collection litigation. Additionally, Mr. Probus was previously employed as general counsel at a national collection agency and speaks regularly on consumer law topics, including debt collection. (Document 59-2). Mr. Probus's affidavit also shows that Mr. Wauson has expertise in this area of law. As stated by the firm resume submitted by Mr. Probus, "Mr. Wauson has extensive litigation experience involving creditors rights/collection, lender liability defense,…and bankruptcy creditor's rights matter. He has been board certified in Civil Trial Law by the Texas Board of Legal Specialization since 1989." (Document No. 59-2 at 1). It is clear that Plaintiff's counsel is

knowledgeable in this area of law, and aside from any issues involved in class certification, there were few novel or difficult questions encountered in preparing for trial.

(3) The Skill Requisite to Perform Legal Services Properly

Plaintiff's counsel was adequately skilled and otherwise qualifies to pursue this case.

(4) The Preclusion of Other Employment by the Attorney due to Acceptance of this Case

This was not an overly complex case and would not have limited the number of cases that counsel could handle at any given time. It did not involve an overly demanding area of the law, and if counsel chose to spend considerable amount of time on this case to the exclusion of others, it was not necessitated by the nature of the case.

(5) The Customary Fee

According to Plaintiff's counsel, the customary hourly rate for attorney's in similar cases in federal court ranges from $250 to $450 per hour. (Document No. 59 at 13). This factor was considered during the lodestar calculation and thus does not affect any adjustment to the analysis. *Turner v. Oxford Mgmt. Servs., Inc.*, 552 F. Supp. 2d 648, 655 (2008); *see Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990).

(6) Whether the Fee is Fixed or Contingent

In his Motion, Plaintiff does not specify whether he agreed to pay either a fixed or contingent fee. Rather, he states:

> The appropriate fee in this case is a fee on an hourly basis, which the FDCPA permits and which Courts [sic] have repeatedly upheld. The Defendant's counsel has agreed in the settlement agreement to Plaintiff's Counsel seeking an award of attorney's fees and expenses, and an hourly rate on a lodestar basis is the appropriate method for determining fees.

(Document No. 59 at 14). It is unclear whether Plaintiff's counsel took this case with the agreement that he would be paid only if Plaintiff was the prevailing party. Regardless, the Court

7

recognizes that the lodestar method is the "appropriate method" to calculate attorney's fees in such cases.

(7) <u>Time Limitation</u>

Plaintiff's counsel has stated that neither his client nor circumstances required any time limitations. In fact, this Court finds that the parties exercised efficiency and economy by settling this case prior to trial.

(8) <u>The Amount Involved and the Result Obtained</u>

The Fifth Circuit has stated that "[t]he most critical factor in determining an attorney's fee award [is] the 'degree of success obtained.'" *Saizon v. Delta Concrete Prods., Co.*, 448 F.3d at 799 (quoting *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003)). Furthermore, the Supreme Court stated in *Hensley* that

> [i]f...a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith...Again, the most critical factor is the degree of success obtained.

461 U.S. at 436.

Here, Plaintiff filed both individual and class claims against Katz and NMRC. The parties did not proceed to trial but settled Plaintiff's individual claims on the eve of his request for class certification. Before negotiations began in earnest in April 2010, Plaintiff's counsel had conducted significant research and discovery, most notably in connection to the class claims. After deposing Defendants, Plaintiff's counsel recognized the low likelihood that the District Court would allow class certification because the chance of recovery was small in light of Defendants' poor finances. Thus, it appears that the parties entered into settlement negotiations due to the financial resources of Defendants, and not due to any apparent weakness in Plaintiff's

claims. As admitted by Mr. Probus, his client's "class claims were...good claims with one exception." (Document No. 59 at 15).

After weeks of negotiations between the parties, a settlement agreement was finalized. In this settlement, Defendants agreed to compensate Plaintiff for his individual claims in the amount of $3,500. Viewed in the most favorable light, the degree of success obtained by Plaintiff's counsel was adequate as to his individual claims. However, even if Plaintiff's class claims were largely "good claims" and it was reasonable for his attorney to pursue these claims, Plaintiff achieved limited success in obtaining a favorable result as to the class claims. Given this limited success, the lodestar amount should be reduced by 5% to $51,863.83.

(9) The Experience, Reputation, and Ability of Counsel

Plaintiff's counsel has established that they are sufficiently experienced, reputable, and able counsel for cases such as this.

(10)   The Undesirability of the Case

Plaintiff claims that his case would have been undesirable to many attorneys because consumer cases "usually [involve] a small amount of actual damages, the law is unique, and the consumer can rarely if ever afford to pay counsel on an hourly basis." (Document No. 59 at 21). However, this Court believes that this case would have been considered desirable by a number of attorneys. Even if consumer cases generally provide a small amount of damages, both Congress and the Texas legislature have provided statutory means by which successful plaintiffs may recover attorney's fees.

(11)   The Nature and Length of the Professional Relationship with the Client

The Court is not aware of any continuing profitable attorney-client relationship between Plaintiff and counsel. Furthermore, it has been stipulated in the Motion for Attorney's Fees and Expenses (Document No. 59) that Plaintiff and counsel had no relationship prior to this case.

(12)   Awards in Similar Cases

The Court has considered the fee awards made in similar cases. In light of those awards and comparing the facts involved in those cases with the facts in this case, the Court concludes that the fee requested by Plaintiff is fair and reasonable.

## II. Expenses

Plaintiff also seeks an award of expenses associated with trial preparation and the resulting settlement agreement. The total amount sought is $3,185.10, representing court costs, travel expenses, photocopies, etc. Plaintiff's counsel has provided the Court with an itemized list, and Defendant has not objected to any of these expenses (Document No. 59-3). In reviewing the itemized list, the Court finds that costs were both necessary and reasonable for prosecution of Plaintiff's case. Thus, Plaintiff's request for court costs and expenses will be GRANTED.

## III. Conclusion and Recommendation

Based on the foregoing, it is RECOMMENDED that Plaintiff's Motion for Attorney's Fees and Expenses (Document No. 59) be GRANTED IN PART and DENIED IN PART, and that Plaintiff be awarded attorney's fees and costs as follows:

1. $51,863.83 in attorney's fees, which amount represents an overall 5% discount of the time and hourly rate found to be unreasonable herein; and

2. $3,185.10 in costs and expenses.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, and party may file

written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten-day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this __17th__ day of August, 2010

_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE